**Slip Op. 14-11**

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **TRADE ASSOCIATES GROUP, LTD.**, | |
| Plaintiff, | |
| v. | **Before: Timothy C. Stanceu, Judge** |
| **UNITED STATES**, | **Court No. 11-00397** |
| Defendant, | |
| and | |
| **NATIONAL CANDLE ASSOCIATION,** | |
| Defendant-Intervenor. | |

## OPINION AND ORDER

[Remanding to the U.S. Department of Commerce a ruling interpreting the scope of an antidumping duty order on certain petroleum wax candles from the People's Republic of China]

Dated: January 31, 2014

*Thomas J. O'Donnell*, *Jessica R. Rifkin*, and *Lara A. Austrins*, Clark Hill PLC, of Chicago IL, for plaintiff Trade Associates Group, Ltd.

*Antonia R. Soares*, Trial Attorney, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant.  With her on the brief were *Stuart F. Delery*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Reginald T. Blades, Jr.*, Assistant Director.  Of counsel on the brief was *Melissa Brewer*, International Office of Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

*Karen A. McGee* and *Teresa L. Jakubowski*, Barnes & Thornburg LLP, of Washington, DC, for defendant-intervenor National Candle Association.

Stanceu, Judge: Plaintiff Trade Associates Group, Ltd. ("Trade Associates"), a U.S.

importer of candles, contests a 2011 "Final Scope Ruling" in which the International Trade

Administration, U.S. Department of Commerce ("Commerce" or "the Department") construed

the scope of an antidumping duty order (the "Order") on certain petroleum wax candles from the

People's Republic of China ("China" or the "PRC").  *Final Scope Ruling: Antidumping Duty*

*Order on Petroleum Wax Candles from the People's Republic of China ("PRC")*, Admin.R.Doc.

No. 3649 (Aug. 5, 2011), *available at* http://ia.ita.doc.gov/download/candles-prc-

scope/candles/20110805-requestors.pdf (last visited Jan. 24, 2014) ("*Final Scope Ruling*").  In

the Final Scope Ruling, Commerce rejected the position, expressed by Trade Associates in a

2009 request ("Scope Ruling Request"), that Commerce should determine a number of

specially-shaped or holiday-themed candles to be outside the scope of the Order.  *Trade Assocs.*

*Grp. Appl. for Scope Ruling on Antidumping Duty Order on Petroleum Wax Candles from*

*China* 2 (June 11, 2009), Admin.R.Doc. No. 3564 ("*Scope Ruling Request*").

        Before the court is plaintiff's USCIT Rule 56.2 motion for judgment on the agency

record.  Pl.'s Mot. for J. on the Agency R., ECF No. 26 (July 25, 2012) ("Pl.'s Mot.").

Defendant and defendant-intervenor National Candle Association ("NCA"), a trade association

of U.S. candle manufacturers and the petitioner in the original antidumping investigation, oppose

plaintiff's motion.  The court remands the Final Scope Ruling for reconsideration, concluding

that Commerce unreasonably interpreted the Order when placing within the scope a large

number of candles made in the shapes of identifiable objects.

## I.  BACKGROUND

        On September 4, 1985, NCA petitioned Commerce and the U.S. International Trade

Commission ("ITC" or the "Commission") to impose antidumping duties on petroleum wax

candles from China.  *Antidumping Pet. on Behalf of the National Candle Ass'n in the Matter of:*

*Petroleum Wax Candles from China* (Sept. 3, 1985) (Admin.R.Doc. No. 3598) ("*Petition*").  On

August 28, 1986, following the Department's final affirmative less-than-fair value ("LTFV")

determination and the ITC's affirmative material injury determination, the Department issued a

final antidumping duty order. *Antidumping Duty Order: Petroleum Wax Candles from China,*

51 Fed. Reg. 30,686 (Aug. 28, 1986) ("*Antidumping Duty Order*").

Trade Associates filed the Scope Ruling Request on June 11, 2009, in which it identified

261 Chinese-origin petroleum wax candles that Trade Associates described as having the shape

of identifiable objects or as being associated with Christmas or other holidays. *Scope Ruling*

*Request* 2.  Commerce initiated an administrative proceeding to respond directly to the Scope

Ruling Request and published a notice seeking "comments from the interested parties on the best

method to consider whether novelty candles should or should not be included within the scope of

the *Order* given the extremely large number of scope determinations requested by outside

parties." *Petroleum Wax Candles from China: Request for Comments on the Scope of the*

*Antidumping Duty Order & the Impact on Scope Determinations*, 74 Fed. Reg. 42,230, 42,230

(Aug. 21, 2009) ("*Request for Comments*").  This notice used the term "novelty candles" to refer

to "candles in the shape of an identifiable object or with holiday-specific design both being

discernable from multiple angles." *Id.*

In August 2010, Commerce issued the preliminary results of the request for comments

("Preliminary Results") in which it adopted a position favorable to Trade Associates and

requested further comment. *Petroleum Wax Candles From the People's Republic of China:*

*Prelim. Results of Request for Comments on the Scope of the Petroleum Wax Candles From the*

*People's Republic of China Antidumping Duty Order*, 75 Fed. Reg. 49,475 (Aug. 13, 2010)

("*Prelim. Results*").  On August 9, 2010 and October 13, 2010,[1] Commerce issued preliminary

scope rulings.  *Mem. to the File re: Certain Petroleum Wax Candles from China: Preliminary*

*Scope Determinations Using Proposed Interpretation* (Aug. 9, 2010) (Admin.R.Doc. No. 3600);

*Mem. to the File re: Petroleum Wax Candles from China: Prelim. Scope Rulings not Included in*

*Prelim. Results* (Oct. 13, 2010) (Admin.R.Doc. No. 3618).

        In the final results of its public comment proceeding ("Final Results"), issued on

August 2, 2011, Commerce reversed its earlier position.  *Petroleum Wax Candles From the*

*People's Republic of China: Final Results of Request for Comments on the Scope of the*

*Antidumping Duty Order*, 76 Fed. Reg. 46,277, 46,278 (Aug. 2, 2011) ("*Final Results*").  The

Final Results incorporated by reference an "Issues and Decision Memorandum."  *Issues &*

*Decision Mem. for Final Results of Request for Comments on the Scope of the Petroleum Wax*

*Candles from China Antidumping Duty Order* (July 26, 2011), A-570-504, ARP 5-10, *available*

*at* http://ia.ita.doc.gov/frn/summary/prc/2011-19529-1.pdf (last visited Jan. 24, 2014) ("*Decision*

*Mem*.").  Commerce incorporated the Final Results by reference in the Final Scope Ruling,

which it issued on August 5, 2011.[2]  *Final Scope Ruling* 3 & n.10 (citation omitted).

---

        [1] In the preliminary scope ruling issued contemporaneously with the preliminary results of its request for comments, the International Trade Administration, U.S. Department of Commerce ("Commerce" or "the Department") made scope determinations on only a portion of the candles in the pending scope requests.  *Petroleum Wax Candles From the People's Republic of China: Prelim. Results of Request for Comments on the Scope of the Petroleum Wax Candles From the People's Republic of China Antidumping Duty Order*, 75 Fed. Reg. 49,475, 49,480 (Aug. 13, 2010) ("*Prelim. Results*").  On October 13, 2010, Commerce issued preliminary determinations for the candles that it had inadvertently omitted from the first preliminary scope ruling.  *Mem. to the File re: Petroleum Wax Candles from China: Prelim. Scope Rulings not Included in Prelim. Results* (Oct. 13, 2010) (Admin.R.Doc. No. 3618).

        [2] In addition to a determination on plaintiff's Scope Ruling Request, the Final Scope Ruling included determinations based on scope requests submitted by importers Candym Enterprises, Ltd., Sourcing International, LLC, and Accent Imports.  *Final Scope Ruling:* (continued…)

In late 2011, Trade Associates commenced this action to contest the Final Scope Ruling. Summons (Oct. 5, 2011), ECF No. 1; Compl. (Nov. 2, 2011), ECF No. 13.  Plaintiff filed its motion for judgment on the agency record on July 25, 2012, Pl.'s Mot. 1, to which defendant and defendant-intervenor responded on February 19, 2013, Def.'s Resp. to Pl.'s Mot. for J. on the Agency R. (Feb. 19, 2013), ECF No. 41 ("Def.'s Resp."); Def.-Intervenor's Resp. in Opp'n to Pl.'s Mot. for J. on the Agency R., ECF No. 40 ("Def.-Intervenor's Resp.").  On April 3, 2013, plaintiff filed replies.  Pl.'s Reply to Def.'s Resp. in Opp'n to Pl.'s Mot. for J. on the Agency R., ECF No. 44; Pl.'s Reply to Def.-Intervenor's Resp. in Opp'n to Pl.'s Mot. for J. on the Agency R., ECF No. 46.

With leave of the court, defendant and defendant-intervenor each submitted supplemental briefs on October 31, 2013 and October 7, 2013, respectively.  Def.'s Supplemental Br., ECF No. 61 ("Def.'s Supplemental Br."); Def.-Intervenor's Supplemental Br., ECF No. 58 ("Def.-Intervenor's Supplemental Br.").[3]  Also with leave of the court, plaintiff submitted a responsive supplemental brief on December 2, 2013.  Pl.'s Supplemental Reply Br. to Def.'s & Def.-intervenor's Supplemental Brs., ECF No. 62.

---

(continued…)

*Antidumping Duty Order on Petroleum Wax Candles from the People's Republic of China ("PRC")*, Admin.R.Doc. No. 3649 (Aug. 5, 2011), *available at* http://ia.ita.doc.gov/download/candles-prc-scope/candles/20110805-requestors.pdf (last visited Jan. 24, 2014) ("*Final Scope Ruling*").

[3] At oral argument on July 18, 2013, the court offered the parties an opportunity to move for leave to submit additional briefing.  Oral Tr. 97-98, (Sept. 5, 2013), ECF No. 56.  Defendant and defendant-intervenor so moved on July 26, 2013, Joint Mot. of Def. & Def.-Intervenor for Leave to File Add'l Briefing, ECF No. 55, and the court granted the motion on September 5, 2013, Order, ECF No. 57.

## II.  DISCUSSION

### A.  Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction under section 201 of the Customs Courts

Act of 1980, 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions brought under

section 516A of the Tariff Act of 1930 ("Tariff Act").[4]  19 U.S.C. § 1516a(a)(2)(B)(iv).

Section 516A provides for judicial review of a determination of "whether a particular type of

merchandise is within the class or kind of merchandise described in an . . . antidumping . . . duty

order."  *Id.*  In conducting review, the court must set aside "any determination, finding, or

conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in

accordance with law."  *Id.* § 1516a(b)(1)(B).

### B.  The Court Remands the Final Scope Ruling for Reconsideration

This case presents the question of whether the Final Scope Ruling, in placing within the

scope various candles made in the shapes of identifiable objects, is based on a permissible

interpretation of the scope language in the Order.  Plaintiff claims on various grounds that the

Final Scope Ruling is contrary to law.  First, plaintiff argues that the Final Scope Ruling

contravenes the Order, which plaintiff reads to exclude all candles in shapes not expressly

mentioned in the pertinent Order language.  Mem. of Law in Supp. of Pl.'s Mot. for J. on the

Agency R. 14-22 (July 25, 2012), ECF No. 26 ("Pl.'s Mem.).  Second, plaintiff argues that

secondary sources examined in the Department's LTFV investigation, including the petition,

confirm that the scope of the Order excludes candles other than those in the identified shapes.

*Id.* at 22-34.  Third, plaintiff submits that the Final Scope Ruling abandons the Department's

---

[4] All statutory citations are to the 2006 edition of the United States Code.  All citations to
regulations are to the 2009 edition of the Code of Federal Regulations.

twenty-five year practice of excluding candles in shapes of identifiable objects from the Order,

undermining needed finality and certainty in the administration of antidumping duty orders.  *Id*.

at 38-40.  In the alternative, plaintiff argues that even if the court determines that the

Department's interpretation of the pertinent Order language is reasonable, the court still should

determine that the Final Scope Ruling is unreasonable because the candles discussed in the

petition "clearly fall" within an exception Commerce established for "figurine" candles.  *Id.*

at 34-38.

As provided in section 731 of the Tariff Act, Commerce conducts an antidumping

investigation to determine whether "a class or kind of foreign merchandise is being, or is likely

to be, sold in the United States at less than its fair value."  19 U.S.C. § 1673(1).  The statute

directs Commerce to include in an antidumping duty order "a description of the subject

merchandise, in such detail as the administering authority deems necessary."  *Id.* § 1673e(a)(2).

In section 351.225 of its regulations, Commerce established a method for conducting scope

inquiries and issuing scope rulings, explaining therein that issues "as to whether a particular

product is included within the scope of an antidumping . . . duty order . . . can arise because the

descriptions of subject merchandise contained in the Department's determinations must be

written in general terms."  19 C.F.R. § 351.225(a).  Antidumping duty orders "may be

interpreted as including subject merchandise only if they contain language that specifically

includes the subject merchandise or may be reasonably interpreted to include it."  *Duferco Steel,*

*Inc. v. United States*, 296 F.3d 1087, 1089 (Fed. Cir. 2002) ("*Duferco*").

The scope language at issue in this case has remained essentially unchanged since the

Order originally was published in 1986.  The 1986 Order contained the following scope

language:

> The products covered by this investigation are certain scented or unscented
> petroleum wax candles made from petroleum wax and having fiber or paper-cored
> wicks.  They are sold in the following shapes: tapers, spirals, and straight-sided
> dinner candles; rounds, columns, pillars, votives; and various wax-filled
> containers.  The products are classified under the Tariff Schedules of the United
> States (TSUS) item 755.25, Candles and Tapers.

*Antidumping Duty Order*, 51 Fed. Reg. at 30,686.  The Order contains no other language

defining the scope.  When specifying the scope of the Order in subsequent issuances, Commerce

has left essentially unchanged the first two sentences quoted above.  Although Commerce made

some modifications and additions in subsequent issuances, these changes solely concern the

conversion of the Tariff Schedules of the United States ("TSUS") to the nomenclature of the

Harmonized Tariff Schedule of the United States ("HTS" or "HTSUS"), which took effect on

January 1, 1989.[5]  The TSUS or HTSUS tariff provisions cited in versions of the Order do not

classify candles according to shape.  Accordingly, the changes to the scope language made since

Commerce issued the Order are not relevant to the issue this case presents.

---

[5] Commerce modified the third sentence, and added a fourth sentence, in conformance
with the nomenclature of the Harmonized Tariff Schedule of the United States ("HTS" or
"HTSUS").  *See, e.g. Notice of Prelim. Results of Antidumping Duty Admin. Review & Partial
Rescission of Review: Petroleum Wax Candles from the People's Republic of China*, 65 Fed.
Reg. 54,224, 54,225 (Sept. 7, 2000).  Commerce also added a fifth sentence to explain that
"[a]lthough the HTS subheading is provided for convenience and customs purposes, our written
description of the scope of this proceeding remains dispositive."  *Id.*  The scope of the
antidumping duty order as modified for the HTSUS is as follows:

> The products covered by this order are certain scented or unscented petroleum
> wax candles made from petroleum wax and having fiber or paper-cored wicks.
> They are sold in the following shapes: tapers, spirals, and straight-sided dinner
> candles; rounds, columns, pillars, votives; and various wax-filled containers.  The
> products were classified under the Tariff Schedules of the United States (TSUS)
> item 755.25, Candles and Tapers.  The products are currently classified under the
> Harmonized Tariff Schedule (HTS) item 3406.00.00.  Although the HTS
> subheading is provided for convenience and customs purposes, our written
> description of the scope of this proceeding remains dispositive.

*Id.*  Commerce has maintained this scope language in subsequent reviews of the Order.

1.  The Final Scope Ruling Unreasonably Interprets the Scope Language of the Order

Plaintiff sought, and Commerce denied, exclusions for candles in the shapes of acorns, beach balls, caramel apples, cupcakes, flip flops, floating leaves, flowers, fruits, garden birdhouses, haunted houses, metallic balls, pears, snowmen, trees, vegetables, witches' hats, and woodies with surfboards, among many others.  *Scope Ruling Request*, Ex. 1; *Final Scope Ruling* 6-35.  The candles for which plaintiff sought exclusion are types of object-shaped candles not specifically identified in the second sentence of the scope language, *i.e.*, these are candles other than "tapers, spirals, and straight-sided dinner candles; rounds, columns, pillars, votives; and various wax-filled containers."  *Antidumping Duty Order*, 51 Fed. Reg. at 30,686.

In the Final Scope Ruling, Commerce concluded generally "that the scope of the *Order* includes candles of any shape, with the exception of birthday candles, birthday numeral candles, utility candles, and figurine candles."  *Final Scope Ruling* 3.  In arriving at this conclusion, Commerce relied on "analysis of the record evidence" from the Final Results and the accompanying Issues and Decision Memorandum.  *Id.*  In the Final Scope Ruling, Commerce excluded only those candles it considered to qualify for its "figurine candle" exception and determined that the vast majority of the candles for which Trade Associates sought exclusion fell within the scope.  *Id*. at 12-35.  Applying a definition of the term "figurine" obtained from Webster's Online Dictionary, Commerce described its figurine candle scope exception as applying to "a candle that is in the shape of a human, animal, or deity."[6]  *Id.* at 5.

---

[6] Applying its definition of the term "figurine," Commerce ruled, for example, that it must deny plaintiff's request for exclusion of a candle in the shape of a "ghost lantern" as "this candle is not a figurine because it represents a ghost, not a human, animal, or deity."  *Final Scope Ruling* 25.

Expressed according to the principle set forth in *Duferco*, 296 F.3d at 1089, the question presented in this case is whether the scope language of the Order "may be reasonably interpreted to include" candles in the shapes of identifiable objects that Commerce determined to fall outside the Department's "figurine" exception.  The court concludes that the Order cannot reasonably be so interpreted.

Commerce presented its interpretation in the Decision Memorandum, addressing both the first and second sentences of the scope language.  As to the word "certain" in the first sentence ("The products covered by this investigation are certain scented or unscented petroleum wax candles made from petroleum wax and having fiber or paper-cored wicks"), Commerce reasoned that "[t]hough the word 'certain' indicates that the *Order* does not include *all* petroleum wax candles, the phrase is ambiguous and cannot itself define what types of petroleum wax candles are excluded." *Decision Mem.* 7.  Rejecting the argument of Trade Associates that the word "certain" in the first sentence must be read to refer to the specific candle shapes identified in the second sentence (" . . . tapers, spirals, and straight-sided dinner candles; rounds, columns, pillars, votives; and various wax-filled containers"), Commerce explained that "the Department has given effect to the word 'certain' by excluding those types of candles for which there is record evidence that the NCA intended their [*sic*] exclusion from the *Order*." *Id.*  Regarding the second sentence, Commerce further reasoned that "the shapes listed in the scope of the *Order*" do not constitute "an exhaustive list of shapes, but simply an illustrative list of common candle shapes." *Final Results*, 76 Fed. Reg. at 46,278.

The Department's interpretation of the scope language is unreasonable in several respects and therefore is unsustainable under the *Duferco* standard.  The Department's construction of the scope language begins with the proposition that the scope of the Order includes, as a general

matter, candles of any shape.  For this proposition to withstand scrutiny under *Duferco*, the scope

language on its face must be capable of being reasonably interpreted so as to include candles

generally without regard to shape.  But nothing in the scope language reasonably supports this

interpretation.  The first sentence cannot be so interpreted, for it provides that not all, but only

"certain," *i.e.*, unspecified, petroleum wax candles with fiber or paper-cored wicks are included

in the scope.  The most that can be said is that the first sentence does not specifically *exclude*

candles of any particular shape.  The second sentence, read in context or on its own, appears to

describe the subject merchandise by candle shape, albeit without language expressly limiting the

scope to the specific shapes identified.  Together, the two sentences cannot reasonably be read to

include generally candles of any shape.

A second flaw in the Department's interpretation is the suggestion that the word "certain"

in the first sentence of the scope language should be read without reference to the second

sentence.  Because the relevant scope language consists of only the two sentences, any

reasonable construction of the term "certain . . . petroleum wax candles" as used in the first

sentence must find meaning in the second sentence.  If, instead, the scope language is read, as

Commerce does, to mean that as a general matter candles made in *any* shape fall within the scope

of the Order, then the second sentence is rendered meaningless and superfluous as it would do

nothing to define the scope.  Such a construction is impermissible not only in failing to give

effect to one of the two sentences that comprise the scope language but also in leaving only the

first sentence to function as the entire operative scope language.  The first sentence, however,

which provides that "certain," *i.e.*, unspecified, petroleum wax candles with fiber or paper-cored

wicks are within the scope, cannot by itself function as a scope definition, as Commerce itself

recognized.  *See Decision Mem.* 7 ("Though the word 'certain' indicates that the *Order* does not

include *all* petroleum wax candles, the phrase is ambiguous and cannot itself define what types

of petroleum wax candles are excluded.") (emphasis in original).  In this way, the Final Scope

Ruling adopts an interpretation resulting in "scope" language that makes no meaningful attempt

to define the scope.  Commerce could not have intended to promulgate an antidumping duty

order that leaves the scope of that order essentially undefined.

A third flaw is the Department's grounding its construction of the word "certain" on

matters entirely outside of the scope language.  According to the Decision Memorandum, this

word must depend for its meaning on "record evidence" from which Commerce concludes that

the petitioner intended that certain candle types would be outside the scope of the investigation.

*Decision Mem.* 7.  This analysis is contrary to the governing statutory provisions, under which

the responsibility for defining the scope falls on Commerce, not the petitioner.  *See* 19 U.S.C.

§§ 1673(1), 1673e(a)(2).  As the Court of Appeals recognized in *Duferco*, 296 F.3d at 1096,

"[t]he critical question is not whether the petition covered the merchandise or whether it was at

some point within the scope of the investigation."  While "[t]he purpose of the petition is to

propose an investigation, . . . [it is] Commerce's final determination [that] reflects the decision

that has been made as to which merchandise is within the final scope of the investigation and is

subject to the order."  *Id*.

Because the scope language of the Order cannot reasonably be interpreted to include

many of the candles identified in the Scope Ruling Request, the court decides that the Final

Scope Ruling is contrary to law and must be remanded to Commerce for reconsideration.

Defendant and defendant-intervenor put forth numerous arguments to the contrary, arguing that

the court should affirm the Final Scope Ruling.  As the court discusses below, none of these

arguments has merit.

## 2.  Trade Associates is Not Estopped from Basing an Argument on the Plain Meaning of the Scope Language

Defendant first raises several arguments that it grounds in the principle of judicial estoppel.  The gist of these arguments is that Trade Associates, having conceded in proceedings before Commerce that the scope language of the Order is ambiguous, should not be heard on any argument related to the plain meaning of the scope language.  Def.'s Resp. 15-19.

The purpose of judicial estoppel is to prevent a party who assumed a certain position in a legal proceeding, and who succeeded in maintaining that position, from subsequently assuming a contrary position simply because its interests have changed.  *See Trustees in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1353-54 (Fed. Cir. 2010) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).  The judicial estoppel principle is based in equity and is a matter for the court's discretion.  *Id.* at 1351.

Defendant's judicial estoppel arguments fail because Trade Associates argued, both in the Scope Ruling Request and in its rebuttal comments following the Preliminary Results, that the Order should be interpreted, based on plain meaning, to pertain only to the candle shapes specifically identified in the scope language of the Order.  *See Scope Ruling Request* 21 ("[T]he items are not within the scope of the Order because they are not in the shape or size of any of the exemplars in the language of the scope."); *Rebuttal Comments by Trade Assocs. Grp., Ltd. on Prelim. Results of Request for Comments on the Scope of the Petroleum Wax Candles from China Antidumping Duty Order* 3-4 (Sept. 29, 2010) (Admin.R.Doc. No. 3612) ("The plain language of the Order clearly limits the scope to [the identified shapes] . . . .") (footnote omitted). Commerce itself acknowledged in the Decision Memorandum that Trade Associates had made the plain meaning argument during the scope inquiry.  *Decision Mem.* 7 ("[Trade Associates]

contend[s] that the phrase in the scope text '*certain* petroleum wax candles' indicates that the scope covers only those enumerated shapes/types in the Order.") (emphasis in original).

It is true that Trade Associates made at least one argument during the scope inquiry premised on the presence or possible presence of ambiguity in the scope language of the Order. For instance, in its case brief to the Department, Trade Associates argued that the scope interpretation Commerce preliminarily adopted in the Preliminary Results "resolves any ambiguity concerning the scope of the Order with respect to candle shapes not specifically mentioned." *Comments by Trade Assocs. Grp., Ltd. on Prelim. Results of Request for Comments on the Scope of the Petroleum Wax Candles from China Antidumping Duty Order* 3 (Sept. 10, 2010) (Admin.R.Doc. No. 3608) (citing *Prelim. Results*, 74 Fed. Reg. at 42,231).  But this statement was in addition to the plain meaning argument Trade Associates also advanced during the scope inquiry.[7]  Moreover, because the statement Trade Associates made regarding ambiguity contains the word "any," it is not clearly a concession of ambiguity.

In summary, it was permissible for Trade Associates to present arguments in the alternative during the scope inquiry and then advance before the court one of those arguments, which is grounded in the plain meaning of the scope language at issue in this case.  And as the court discusses below, the mere presence of some form of ambiguity is insufficient, standing alone, to support a conclusion that Commerce reasonably interpreted the scope language of the Order.

---

[7] In the Preliminary Results, Commerce preliminarily concluded, *inter alia*, that candle shapes and types other than those specifically identified in the Order ("tapers, spirals, and straight-sided dinner candles; rounds, columns, pillars, votives; and various wax-filled containers") would fall outside the scope of the Order.  *Prelim. Results*, 75 Fed. Reg. at 49,480,

        3.  The Final Scope Ruling Cannot Be Sustained on the Basis of Ambiguity in the Language
                                           of the Order

        Defendant next argues that "Commerce reasonably determined that the scope language is

ambiguous based on the broad language of the first sentence and the language of limitation

reflected in the second sentence."  Def.'s Resp. 11.  According to defendant, this ambiguity

permits Commerce to interpret the Order broadly to include candles made in shapes not

mentioned in the second sentence and, in so doing, to take into consideration the sources

identified in section 351.225(k)(1) of its regulations, including the petition, initial investigation,

and prior scope determinations.[8]  *Id.* at 20-25.  Relying on *Novosteel SA v. United States*,

284 F.3d 1261 (Fed. Cir. 2002) ("*Novosteel*"), defendant submits that, in light of the deference

owed to the Department's interpretation of its antidumping orders, there is a low bar for the

identification of ambiguity in scope language.  *Id.* at 21.

        Defendant's argument is unavailing.  The premise that the scope language is in some way

ambiguous is insufficient to support a conclusion that the Final Scope Ruling is a reasonable

interpretation of the scope language of the Order.  Under *Duferco*, the inquiry that is controlling

in this case is whether the scope language "may be reasonably interpreted to include," *Duferco*,

296 F.3d at 1089, candles that are made in the shape of specific objects but that do not fall within

---

        [8] The regulation directs Commerce first to consider "[t]he descriptions of the
merchandise contained in the petition, the initial investigation, and the determinations of
[Commerce] (including prior scope determinations) and the [International Trade] Commission."
19 C.F.R. § 351.225(k)(1).  If these secondary sources are not dispositive, the regulations direct
Commerce to evaluate the merchandise according to five factors set forth in section
351.225(k)(2): (i) "[t]he physical characteristics of the product; (ii) [t]he expectations of the
ultimate purchasers; (iii) [t]he ultimate use of the product; (iv) [t]he channels of trade in which
the product is sold; and (v) [t]he manner in which the product is advertised and displayed."
19 C.F.R. § 351.225(k)(2).

the Department's figurine candle exception.  For the several reasons the court discussed above,

the scope language cannot be so interpreted.

        The second sentence could have avoided any ambiguity were it to have stated expressly

that the scope includes *only* candles of the specified shapes and types.  One could argue that the

second sentence, read in context, is ambiguous in that it could be construed either as "an

illustrative list of common candle shapes," as Commerce considered it to be, *Final Results*,

76 Fed. Reg. at 46,278, or as an exhaustive list of the candle shapes and types that fall within the

scope of the Order.[9]  But even were the court to accept as reasonable both of these constructions

of the second sentence, the court still could not sustain the Final Scope Ruling.  Even if the court

were to assume, *arguendo*, that the second sentence was intended only as an illustrative list of

common candle shapes, a reasonable interpretation still must give some meaning to the second

sentence when ascertaining the intended scope of the Order.  Either the sentence limits the scope

to the mentioned shapes, or it excludes candles in shapes that are not common candle shapes as

illustrated by the terms of the second sentence.[10]  However, the term "common candle shapes" in

no way describes the candles at issue here, each of which is in a unique shape depicting a

---

        [9] For example, it could be argued that the *eiusdem generis* ("things of the same kind")
canon of construction supports a reading of the second sentence as exemplary of common candle
shapes.  Of course, it also could be argued that the canon of *expressio unius est exclusio alterius*
("the express mention of one thing excludes all others") supports a reading of the second
sentence as defining the specific shapes and types to which the Order applies.

        [10] If, aside from these two competing interpretations, the second sentence of the scope
language were read to signify that the subject candles are sold in the mentioned shapes but may
be sold in any shape, it would lose any meaning, as the court discussed earlier in this Opinion
and Order.

specific object.[11]  In other words, there may or may not exist "common candle shapes" other than

those expressed in the second sentence, but that question is irrelevant to the interpretive issue this

case presents.

In short, the scope language is not ambiguous in a way that makes it susceptible to a

reasonable construction under which Commerce may hold candles in the shapes of identifiable

objects to be within the scope of the Order.  The court, therefore, rejects the arguments defendant

premises on the presence of ambiguity in the scope language.  For the same reason, the court also

rejects defendant-intervenor's similar arguments that the second sentence of the scope language

"is language of inclusion, not exclusion" and that "[i]f all shapes were to be excluded other than

those listed, then the language would say 'are *only* sold in the following shapes.'"  Def.-

Intervenor's Resp. 17 (emphasis in original).

Defendant argues that the mere presence of any form of ambiguity in the scope language

is sufficient under *Duferco* to justify reliance on the sources identified in § 351.225(k)(1) and, if

those sources are not dispositive, the criteria listed in § 351.225(k)(2).  Def.'s Supplemental

Br. 8.  Defendant's argument is correct in one respect: the opinion in *Duferco* does not expressly

state that Commerce is in some instances legally *precluded* from considering the § 351.225(k)

factors.  It does not follow, however, that the Department's interpretation of the scope language

is sustainable in this case.  Again, *Duferco* holds that Commerce may not place merchandise

within the scope of an order where the scope language of that order may not reasonably be

interpreted to include that merchandise.  *Duferco*, 296 F.3d at 1089.  That is precisely what

---

[11] Of the candle shapes described in the second sentence of the scope language, only one
conceivably could be read to describe candles of an individual shape: candles consisting of wax-
filled containers, which theoretically could be made to resemble an object.  Nonetheless, no
candles consisting of wax-filled containers are at issue in this case.

Commerce did in the Final Scope Ruling.  As the Court of Appeals reasoned in *Duferco*, the

petition and the investigation "may provide valuable guidance" but "cannot substitute for

language in the order itself." *Id.* at 1097.  The court, therefore, need not reach the question of

whether the Final Scope Ruling erred in considering the § 351.225(k)(1) factors.  It is sufficient

here to conclude, as the court does, that there is no reasonable construction of the scope language

under which the Order could include those plaintiff's candles that were made in shapes that

resemble identifiable objects.

        Defendant also argues that "the nature of the parties' contentions during the

administrative process (that is, debating the content of the section 351.225(k)(1) sources)

indicates that the parties agreed that the scope language is ambiguous." *Id*.  This argument fails

because the question of ambiguity of scope language, even were it determinative in this case, is

not an issue of contested fact on which a stipulation of the parties to the administrative

proceeding could bind the court.

        4.  The Court Rejects Defendant's and Defendant-Intervenor's Various Arguments that Are
Based on Section 351.225(k) of the Department's Regulations and Various Judicial Decisions

        The court disagrees with defendant's argument that *Novosteel* is controlling on the issue

this case presents.  The scope-related issues in *Novosteel*, which affirmed a decision of this Court

to uphold a challenged scope determination, concerned whether Commerce reached a valid

finding that the product at issue in the case was "flat-rolled" within the meaning of that term in

the scope language of an antidumping order and whether Commerce correctly included the

product within the scope even though the tariff classification of the product was not among those

expressly listed in the scope language.  *See Novosteel*, 284 F.3d at 1268-69.  Rather than

*Novosteel*, the court considers *Duferco* to be the precedent establishing a rule of law controlling

the outcome of this case.  In *Novosteel*, the Court of Appeals reached its determination of a rule

of law as a matter of first impression. *Id.* at 1095 ("This case presents an issue of first

impression—whether the scope orders can be interpreted to cover subject merchandise even if

there is no language in the orders that includes or can be reasonably interpreted to include the

merchandise."). The holding of *Novosteel*, a decision that preceded *Duferco*, does not compel a

conclusion that Commerce reasonably construed the scope language at issue here. To the

contrary, the Court of Appeals drew a contrast in *Duferco* where it cited *Novosteel* as

recognizing that "scope orders must necessarily be written in general terms, 19 C.F.R.

§ 351.225(a)(2001), and [that] the 'Commerce Department enjoys substantial freedom to

interpret and clarify its antidumping orders,'" under 19 C.F.R. § 351.225(k)(1). *Duferco*,

296 F.3d at 1096-97 (quoting *Novosteel*, 284 F.3d at 1269). Again, the critical point is that

review of the petition and the investigation "may provide valuable guidance" but "cannot

substitute for language in the order itself." *Id.* at 1097.

Further alluding to the "general terms" language of 19 C.F.R. § 351.225(a), defendant

argues that Commerce intentionally, and permissibly, could have written open-ended scope

language in the Order in anticipation of candle shapes or types not in existence when the Order

was promulgated. Oral Tr. 33-34. Defendant submits that Court of Appeals precedent does not

"dictate how Commerce is to craft scope language." Def.'s Supplemental Br. 7. Concerning the

question of whether the interpretation adopted in the Final Scope Ruling would construe scope

language in a matter too open-ended to define the scope, Defendant argues that *Duferco* does not

"hold that this Court is authorized to determine whether scope language 'fails' as scope

language." *Id.* These arguments miss the point of the inquiry the court must conduct in this case.

The question of whether Commerce had the discretion to leave the scope as open-ended

as defendant suggests is not before the court. Nor is the question of whether the court

permissibly may, in defendant's words, "determin[e] the sufficiency of the scope language as

scope language." *Id.* at 8.  As the court has emphasized, the relevant question is whether the

scope language reasonably may be interpreted to include the object-shaped candles that the Final

Scope Ruling held to be subject to the Order.  In answering that question, the court concludes

that the Department's interpretation of the scope language is flawed for the reasons the court has

identified, one of which is that, as so interpreted, the scope language becomes indefinite in a way

that Commerce could not have intended.  Defendant's counterargument, that Commerce

permissibly looked beyond the second sentence to define the word "certain," would have the

court conclude that Commerce intended to confine the scope to certain types of candles while

declining to specify what those types are.  It is implausible that Commerce would have taken so

cavalier an approach to the critical task of defining the scope of the Order.  Moreover, every

textual indication is to the contrary.  In the Order, Commerce introduced its scope language with

the following words: "The products covered by this investigation are  . . . ."  *Antidumping Duty*

*Order*, 51 Fed. Reg. at 30, 686.  Commerce later stated, on updating the scope language for the

HTS, that the first two sentences, and not the subsequent sentences referring to tariff

classification, are intended to be "dispositive" of the scope.  *See, e.g.*, *Notice of Prelim. Results*

*of Antidumping Duty Admin. Review & Partial Rescission of Review: Petroleum Wax Candles*

*From the People's Republic of China*, 65 Fed. Reg. 54,224, 54,225 (Sept. 7, 2000) ("Although

the HTS subheading is provided for convenience and customs purposes, *our written description*

*of the scope of this proceeding remains dispositive*." (emphasis added)).  In summary, there can

be no doubt that Commerce, on promulgating the Order, intended for the two sentences in

question to serve as dispositive scope language.  Commerce could not also have intended that

these same two sentences would leave the scope of the Order as vague and open-ended as

defendant's arguments would have the court presume.  *See ArcelorMittal Stainless Belgium N.V.*

*v. United States*, 694 F.3d 82, 90 (Fed. Cir. 2012) ("Commerce's discretion to define and clarify

the scope of an investigation is limited by concerns for transparency of administrative actions.").

Both defendant and defendant-intervenor rely on *King Supply Co., LLC v. United States*,

674 F.3d 1343 (Fed. Cir. 2012) ("*King Supply*") in support of the Final Scope Ruling.  Defendant

posits that the second sentence of scope language at issue in *King Supply* is analogous to the

second sentence of the scope language at issue in this case.  Def.'s Supplemental Br. 9.

Defendant notes that in *King Supply*, the Court of Appeals "rejected this Court's finding that the

scope should have used direct qualifiers, such as 'for example' or 'principally used,' if the

second sentence was to be only exemplary."  *Id.*  Defendant-intervenor makes a similar

argument, maintaining that "[t]he absence of such qualifying language does not preclude an

inclusive interpretation of the scope language."  Def.-Intervenor's Resp. 18.  These arguments do

not convince the court that the Final Scope Ruling is sustainable upon judicial review.  The court

need not decide, and does not decide, whether the second sentence of the scope language at issue

in this case expressly limits the scope of the Order to the specified candle shapes and types.  As

the court discussed herein, the second sentence might be construed as expressly limiting the

scope, or alternatively, as listing examples of the common candle shapes that the Order includes.

However, even under the latter construction, the Order is not reasonably susceptible to an

interpretation under which the Order includes candles in the shapes of identifiable objects that

are not in common candle shapes.

Moreover, the holding in *King Supply* sheds no light on the issue this case presents.  *King*

*Supply* concerned carbon steel butt-weld pipe fittings that Commerce ruled to be subject the

following scope language: "These formed or forged pipe fittings are used to join sections in

piping systems where conditions require permanent, welded connections, as distinguished from

fittings based on other fastening methods (*e.g.*, threaded, grooved, or bolted fittings)." *King*

*Supply*, 674 F.3d at 1346 (citation omitted).  The plaintiff in *King Supply* conceded that its

imported fittings "are identical to those subject" to the antidumping order but argued that these

fittings were outside of the scope because they were not actually used to join sections of piping

systems but instead were "'for structural use in applications such as handrails, fencing, and

guardrails.'" *Id.* at 1347 (citation omitted).  Commerce concluded that the scope language

sentence was not an "end-use" provision but rather that it uses piping systems only as an

example "where a permanent, welded connection is desired'" and that "'the language 'are used'

does not mean that the use identified is necessarily the exclusive use.'" *Id.* (citation omitted).

The Court of Appeals noted that end-use restrictions are disfavored in antidumping duty orders

because "the physical characteristics of an imported product are more readily identifiable than

the product's end use, which may be unclear at the time of importation." *Id.* at 1348.  The Court

of Appeals held that antidumping orders are not subject to end-use restrictions "unless the AD

[antidumping] order at issue includes clear exclusionary language," which "must leave no

reasonable doubt that certain products were intended to be outside the scope of the *AD*

[*Antidumping*] *Order* based solely on the end use of those products." *Id.* at 1349.  The Court of

Appeals determined that the "are used" language at issue in *King Supply* was not sufficiently

clear to render unreasonable the Department's interpretation that the scope did not preclude other

uses. *Id.* at 1349-50.

    Defendant-intervenor points to the sources identified in 19 U.S.C. § 351.225(k)(1) to

argue that substantial evidence supports the Department's interpretation of the scope language in

the Order.  Defendant-intervenor argues that the Petition sought an antidumping investigation

that generally included all shapes of candles, with only a few exceptions, and that the

Commission's injury determination construed the scope of the investigation in this way.  Def.-

Intervenor's Resp. 14-17.  But under *Duferco*, the language of the Order must take precedence

over the guidance provided in the sources identified in § 351.225(k), including the petition and

the ITC's injury determinations.  *Duferco*, 296 F.3d at 1097.  Defendant-intervenor correctly

points out that the ITC construed the scope of the investigation to include petroleum wax candles

"'in *various shapes and sizes*, including tapers, spirals, straight-sided dinner candles, rounds,

columns, pillars, votives, and various wax-filled containers . . ." and excluding "birthday,

birthday numeral, and figurine candles."  Def.-Intervenor's Resp. 9 (quoting Petroleum Wax

Candles from the People's Republic of China, Inv. No. 731-TA-282 (Final), USITC Pub. 1888

(August 1986)) (emphasis added in original).  But Congress gave Commerce, not the ITC, the

responsibility to define the scope of an antidumping duty order.  19 U.S.C. § 1673e(a)(2).

Defendant-intervenor argues that its petition "did not exclude any candles made of

petroleum wax from the scope of the investigation requested."  *Id*. at 15 (citation omitted).  This

argument fails on two grounds.  First, the language defendant-intervenor chose in its petition

does not establish that defendant-intervenor intended to request an investigation of petroleum

wax candles of any shape.  Under the heading "*Description of the Imported Merchandise*," the

petition stated as follows:

> The imported PRC candles are made from petroleum wax and contain fiber or
> paper-cored wicks.  They are sold in the following shapes: tapers, spirals, and
> straight-sided dinner candles; rounds, columns, pillars, votives; and various
> wax-filled containers.  These candles may be scented or unscented.  While
> manufactured in the PRC, these candles are marketed in the United States and are
> generally used by retail consumers in the home or yard for decorative or lighting
> purposes.

*Petition*, at 6-7.  The first sentence of NCA's proposal, read in isolation, might be read to suggest

a scope not limited to the enumerated candle shapes.  But the second sentence, which Commerce

adopted *verbatim* in the Order, can be read to indicate that the petition sought an investigation

limited to the listed candle shapes.  It is difficult to reconcile the inclusion of that sentence in the

petition with defendant-intervenor's contention that the petition sought an investigation of

candles of all shapes.[12]  Second, Commerce did not adopt *verbatim* NCA's first sentence.  As

formulated by Commerce in the Order, the first sentence of the scope language, which refers

instead to "*certain* scented or unscented petroleum wax candles," is more limited than the

analogous language in the NCA's petition.  *Antidumping Duty Order*, 51 Fed. Reg. at 30,686

(emphasis added).  Because it is Commerce, not the petitioner, that defines the scope of an

antidumping duty order, *Duferco*, 296 F.3d at 1089, defendant-intervenor's argument is

unpersuasive.

   In response to the court's inquiry as to whether the interpretation of the scope language

adopted in the Final Scope Ruling would result in an undefined scope, defendant-intervenor

argues that "[c]riteria defining which candles are in and outside the scope of the *Candles Order*

are found in its first sentence."  Def.-Intervenor's Supplemental Br. 2.  Defendant-intervenor

adds that "Commerce's interpretation of the second sentence of the scope language as providing

an illustrative, rather than an exhaustive or exclusive, listing of the shapes in which such candles

are typically sold in no way negates the defining criteria contained in the first sentence of the

scope language, and does not leave importers and exporters without guidance as to which

---

[12] In the Preliminary Results, Commerce found that "[a] thorough review of the record clearly illustrates that the NCA did not intend for the scope of the candles *Order* to include all candles" and "advocated a scope where only the enumerated shapes would be covered."  *Prelim. Results*, 75 Fed. Reg. at 49,479.  Commerce abandoned its finding when finalizing the decision.

candles are in and outside the scope of the *Candles Order.*"  *Id.*  As "defining criteria" in the first sentence, defendant-intervenor points to the presence of petroleum wax and the type of wick.  *Id.*

Defendant-intervenor's argument overlooks the effect of the word "certain" in the first sentence.  That word must be read to indicate that some, but not all, PRC-origin petroleum wax candles with paperboard or fiber wicks are within the scope of the Order.  Defendant-intervenor's statement that "[c]riteria defining which candles are in and outside the scope of the *Candles Order* are found in the first sentence," *id.* 2, is correct only insofar as it refers to composition of the wax and type of wick—two criteria not at issue in this case.  It is not correct as to the sole criterion that *is* at issue in this case, *i.e.*, the shape of the candle.  Defendant-intervenor concedes that "the scope language must be read in its entirety," *id.*, maintaining that importers and exporters may consult the scope language for guidance as to what is inside and outside of the scope.  However, as the court has discussed, the second sentence reasonably might be read to mean that only the specified shapes and types are included or, at least arguably, might be read to mean that the Order excludes candles other than those sold in common shapes, examples of which are provided in the second sentence.  The Department's construction of the scope language, under which candles in all shapes generally are included, subject to exceptions not mentioned in the Order, does precisely what defendant-intervenor argues it does not: it leaves affected parties in the dark as to what the Order actually includes and excludes.

Regarding the word "certain" in the first sentence of the scope language, defendant-intervenor argues that this word need not necessarily be read to refer to the second sentence and that it is "equally plausible that 'certain' refers to the presence and/or nature of the wick."  Def.-Intervenor's Supplemental. Br. 6.  Such a construction is at variance with the one

Commerce expressed in the Decision Memorandum, which grounded the meaning of the term in

matters outside the language of the Order.  More important, though, is that

defendant-intervenor's proposed construction would distort the first sentence well beyond

common meaning and render the adjective "certain" superfluous.

The same must be said of defendant-intervenor's argument that "[u]se of 'scented or

unscented' indicates that the Order broadly encompasses all candles, provided they have some

petroleum wax and a fiber or paper-cored wick." *Id.* at 7.  Somewhat inconsistently with that

argument, defendant-intervenor also argues that while use of the word "certain" in the first

sentence of the scope language "confirms that there are some limitations on the Order's scope,

the language of the first sentence confirms that the Order is meant to be inclusive and encompass

most petroleum wax candles." *Id.*  To conclude that the first sentence connotes that the Order is

meant to include most petroleum wax candles is to read something into the sentence that is not

there.  Moreover, the question is not whether the scope includes most petroleum wax candles but

whether the scope language reasonably can be read to include the object-shaped candles that

Commerce ruled not to qualify for its figurine exception.

Defendant-intervenor argues that "nothing in the Federal Circuit's holding in *Duferco*

mandates that Commerce's interpretation of the *Candles Order* is unsupported at law." *Id.* at 8.

Defendant-intervenor would distinguish *Duferco*, and certain other Court of Appeals decisions

rejecting Commerce scope decisions, from this case because *Duferco* and the other decisions

involved antidumping duty order scope language that unambiguously excluded the merchandise

at issue, whereas, according to defendant-intervenor, in this case "Commerce's interpretation is

not contrary to the express language of the order." *Id.* at 11.  This argument overlooks the

breadth of the rule of law established in *Duferco*, under which a court may uphold a

determination that merchandise is included within the scope of an order only where the scope

language specifically includes it or may be reasonably interpreted to include it.

*Duferco*, 296 F.3d at 1089.  The logic of the rule in *Duferco* is straightforward: were Commerce

empowered in a scope ruling to place merchandise within the scope of an order that cannot

reasonably be interpreted to include that merchandise, Commerce would be altering the scope,

not interpreting it.  *See id.* at 1097 ("Repeatedly, decisions of this court confirm that '[a]lthough

the scope of a final order may be clarified, it can not be changed in a way contrary to its terms."

(*quoting Smith Corona Corp. v. United States*, 915 F.2d 683, 686 (Fed. Cir. 1990).).

Defendant-intervenor argues that "[p]laintiff's merchandise is clearly encompassed within the

first sentence of the scope language; Plaintiff does not dispute that its candles both contain

petroleum wax and have either fiber or paper-cored wicks" and that unlike the scope language at

issue in *Duferco*, "the second sentence of the scope language contains no qualifiers indicating

whether the list is illustrative or exclusive."  Def.-Intervenor's Supplemental Br. 11.  However,

as discussed *supra*, the first sentence of the scope language does not clearly encompass the

candles in question because the word "certain" therein, and the two scope language sentences,

when read together, cannot reasonably be interpreted to encompass those candles even if the

second sentence is read as illustrative rather than exclusive.

Finally, defendant-intervenor argues that "[p]laintiff's hyper-strict interpretation of

*Duferco* would require that antidumping duty contain a heightened degree of specificity far

beyond that required under the law" and that under this interpretation "no resort to secondary

sources under 19 C.F.R. § 351.225(k)(1) may be had," leading to "the result that candles

Commerce has long-recognized as excluded from the scope of the *Candles Order*, such as

birthday candles and utility candles, would no longer be excluded."  *Id.* at 14.

Defendant-intervenor describes birthday candles as tapers and spirals and utility candles as

pillars or columns and asserts that "Commerce could not rely on secondary sources to establish

such exclusions because the plain language of the Order clearly encompasses those candle

shapes. *Id.* (citing *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1301

(Fed. Cir. 2013), reh'g denied (Nov. 7, 2013) ("[J]ust as orders cannot be extended to *include*

merchandise that is not within the scope of the order as reasonably interpreted, merchandise

facially covered by an order may not be *excluded* from the scope of the order unless the order

can reasonably be interpreted so as to exclude it.") (emphasis in original)).  The court is

unpersuaded by this argument.  The court does not hold that the scope language in the Order fails

for lack of specificity.  Rather, the court holds, for the various reasons discussed herein, that

Commerce unreasonably interpreted the scope language in the Order to include candles in the

shapes of identifiable objects.  This conclusion of law is not altered by the findings Commerce

made in the Scope Ruling according to § 351.225(k)(1).  As an ancillary matter, the validity of

the exclusions for birthday and utility candles that Commerce has recognized are not at issue in

this case.

### III.  CONCLUSION AND ORDER

In placing within the scope of the Order various candles made to resemble identifiable

objects, the Final Scope Ruling applied an impermissible interpretation of the scope language in

the Order.

Therefore, upon consideration of the *Final Scope Ruling: Antidumping Duty Order on

Petroleum Wax Candles from the People's Republic of China ("PRC")*, A-570-504, , ARP 5-10

(Aug. 5, 2011), *available at* http://ia.ita.doc.gov/download/candles-prc-scope/candles/20110805-

requestors.pdf (last visited Jan. 21, 2014) ("Final Scope Ruling"), the *Petroleum Wax Candles*

*From the People's Republic of China: Final Results of Request for Comments on the Scope of*

*the Antidumping Duty Order*, 76 Fed. Reg. 46,277, 46,278 (Aug. 2, 2011) ("Final Results"), and

all papers and proceedings had herein, it is hereby

**ORDERED** that the Final Scope Ruling of the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department"), which incorporates by reference the Final Results, be, and hereby is, set aside as an impermissible interpretation of the scope of the *Antidumping Duty Order: Petroleum Wax Candles from the People's Republic of China,* 51 Fed. Reg. 30,686 (Aug. 28, 1986), to the extent it rules on the Scope Ruling Request submitted by plaintiff Trade Associates Group, Ltd. ("Trade Associates"), *Trade Assocs. Grp. Appl. for Scope Ruling on Antidumping Duty Order on Petroleum Wax Candles from China* 2 (June 11, 2009) (Admin.R.Doc. No. 3564) ("*Scope Ruling Request*"); it is further

**ORDERED** that Commerce shall have ninety (90) days from the date of this Opinion and Order to file a remand redetermination comprising a new scope ruling that complies with this Opinion and Order and addresses the products in the Scope Ruling Request submitted by Trade Associates; and it is further

**ORDERED** that plaintiff and defendant-intervenor shall have thirty (30) days from the date of the Department's filing of the remand redetermination in which to file comments on the remand redetermination; and defendant shall have fifteen (15) days after the filing of the last comment in which to file a reply to the comments of the other parties.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated:  January 31, 2014
            New York, New York