Slip Op. 15-145

## UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| **TRADE ASSOCIATES GROUP, LTD.**, |
| Plaintiff, |
| v. |
| **UNITED STATES**, |
| Defendant, |
| and |
| **NATIONAL CANDLE ASSOCIATION,** |
| Defendant-Intervenor. |

Before: Timothy C. Stanceu, Chief Judge

Court No. 11-00397

## OPINION AND ORDER

[Issuing a second remand order in litigation concerning the scope of an antidumping duty order on certain petroleum wax candles from the People's Republic of China]

Dated:December 28, 2015

*Thomas J. O'Donnell* and *Jessica R. Rifkin*, Clark Hill PLC, of Chicago, IL, for plaintiff Trade Associates Group, Ltd.

*Antonia R. Soares*, Trial Attorney, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant United States. With her on the brief were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Reginald T. Blades, Jr.*, Assistant Director. Of counsel on the brief was *Melissa Brewer*, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

*Karen A. McGee* and *Teresa L. Jakubowski*, Barnes & Thornburg LLP, of Washington, DC, for defendant-intervenor National Candle Association.

Stanceu, Chief Judge: In this litigation, plaintiff Trade Associates Group, Ltd. ("Trade

Associates"), a U.S. importer of candles, contested a 2011 "Final Scope Ruling" of the

International Trade Administration, U.S. Department of Commerce ("Commerce" or the

"Department"), which interpreted the scope of an antidumping duty order (the "Order") on

certain petroleum wax candles from the People's Republic of China ("China" or the "PRC").

*Final Scope Ruling: Antidumping Duty Order on Petroleum Wax Candles from the People's Republic of China* (Aug. 5, 2011), (Admin.R.Doc. No. 56) ("*Final Scope Ruling*").  In the Final Scope Ruling, Commerce rejected the position taken by Trade Associates in a 2009 request ("Scope Ruling Request") that Commerce should determine various specialty-shaped or holiday-themed candles to be outside the scope of the Order.

Before the court is the Department's decision on remand ("Remand Redetermination") issued in response to the court's opinion and order in *Trade Assocs. Grp., Ltd. v. United States*, 38 CIT __, 961 F. Supp. 2d 1306 (2014) ("*Trade Associates I*").  *Results of Redetermination Pursuant to Trade Assocs. Grp., Ltd. v. United States* (June 16, 2014), ECF No. 66-1 ("*Remand Redetermination*").  The court orders a second remand, concluding that the Remand Redetermination is based on an unreasonable interpretation of the scope language of the Order.

## I. BACKGROUND

The court's prior opinion in *Trade Associates I*, 38 CIT at __, 961 F. Supp. 2d at 1308-09, presents background information on this case, which is summarized briefly and supplemented herein with developments since the issuance of that opinion.

### A.  Administrative Proceedings Following Submission of the Scope Ruling Request

Trade Associates filed the Scope Ruling Request on June 11, 2009, in which it identified 261 Chinese-origin petroleum wax candles that Trade Associates described as having the shape of identifiable objects or as being associated with Christmas or other holidays.  *Trade Assocs. Grp. Application for Scope Ruling on Antidumping Duty Order A-570-504 on Petroleum Wax Candles from the People's Republic of China* 2 (June 11, 2009) (Admin.R.Doc. No. 1) ("*Scope Ruling Request*").  After receiving the Scope Ruling Request, Commerce published, on

August 21, 2009, a Federal Register notice seeking "comments from interested parties on the

best method to consider whether novelty candles should or should not be included within the

scope of the *Order* given the extremely large number of scope determinations requested by

outside parties." *Petroleum Wax Candles from the People's Republic of China: Request for*

*Comments on the Scope of the Antidumping Duty Order and the Impact on Scope*

*Determinations*, 74 Fed. Reg. 42,230, 42,230 (Int'l Trade Admin. Aug. 21, 2009) ("*Request for*

*Comments*").  In the notice, Commerce defined the term "novelty candles" as "candles in the

shape of an identifiable object or with holiday-specific design both being discernable from

multiple angles." *Id*.  Commerce proposed two options.  Under "Option A," only candles in

shapes identified in the Order, which were "tapers, spirals, and straight-sided dinner candles;

rounds, columns, pillars, votives; and various wax-filled containers" would be within the scope

of the Order.  *Id*., 74 Fed. Reg. at 42,231.  For purposes of Option A, candles in the specified

shapes would be considered to be within the scope "regardless of etchings, prints, moldings or

other artistic or decorative enhancements including any holiday-related art." *Id*.  Under

"Option B," Commerce would consider all candle shapes, including novelty candles, to be within

the scope of the Order. *Id*.

Approximately a year later, Commerce published preliminary results of its request for

comments. *Petroleum Wax Candles From the People's Republic of China: Preliminary Results*

*of Request for Comments on the Scope of the Petroleum Wax Candles from the People's*

*Republic of China Antidumping Duty Order*, 75 Fed. Reg. 49,475 (Int'l Trade Admin.

Aug. 13, 2010) ("*Preliminary Results*").  Approximately a year after that, on August 2, 2011,

Commerce published the final results of its request for comments. *Petroleum Wax Candles*

*From the People's Republic of China: Final Results of Request for Comments on the Scope of*

*the Antidumping Duty Order*, 76 Fed. Reg. 46,277 (Int'l Trade Admin. Aug. 2, 2011) ("*Final*

*Results*").  The Final Results incorporated by reference an "Issues and Decision Memorandum."

*Issues & Decision Mem. for Final Results of Request for Comments on the Scope of the*

*Petroleum Wax Candles from the People's Republic of China Antidumping Duty Order*,

A-570-504, (July 26, 2011) (Admin.R.Doc. No. 54), *available at*

http://enforcement.trade.gov/frn/summary/PRC/2011-19529-1.pdf (last visited Dec 18, 2015)

("*Final Results Decision Mem.*").  On August 5, 2011, Commerce issued a final determination on

the scope request of Trade Associates ("Final Scope Ruling") in which it incorporated by

reference the final results of the request for comments.  *Final Scope Ruling* 3 & n.10 (citation

omitted).  In the Final Scope Ruling, Commerce concluded that, as a general matter, "the scope

of the Order includes candles of any shape, with the exception of birthday candles, birthday

numeral candles, utility candles, and figurine candles."  *Final Scope Ruling* 3.  Commerce

described its figurine candle exception as applying to "a candle that is in the shape of a human,

animal, or deity."  *Id.* at 5.

B.  Initiation of this Action and the Court's First Remand Opinion and Order

In late 2011, Trade Associates commenced this action contesting the Final Scope Ruling.

Summons (Oct. 5, 2011), ECF No. 1; Compl. (Nov. 2, 2011), ECF No. 13.  Upon judicial review

of the Final Scope Ruling, the court concluded that "the Final Scope Ruling applied an

impermissible interpretation of the scope language in the Order."  *Trade Associates I*, 38 CIT

at __, 961 F. Supp. 2d at 1322.  The court ordered Commerce "to file a remand redetermination

comprising a new scope ruling that complies with this Opinion and Order and addresses the

products in the Scope Ruling Request submitted by Trade Associates."  *Id*. at __, 961 F. Supp. 2d

at 1323.

C.  The Remand Redetermination

In response to the court's opinion and order in *Trade Associates I*, Commerce issued the

Remand Redetermination on June 16, 2014.  *Remand Redetermination* 1, 3.  Commerce included

an attachment to the Remand Redetermination in which it ruled individually on 269 candles, as

identified by product number and including a photographic illustration.  Attach. 1 to *Remand*

*Redetermination* (June 16, 2014)*,* ECF No. 66-1 ("*Department's Candle Chart*").  Of the 261

product numbers in the plaintiff's Scope Request, Commerce concluded that 120 are within the

scope of the Order.  *Remand Redetermination* 20.

Plaintiff and defendant-intervenor National Candle Association ("NCA"), the petitioner

in the antidumping investigation resulting in issuance of the Order, submitted comments to the

court on July 23, 2014.  Pl.'s Comments on Results of Redetermination (July 23, 2014), ECF

No. 69 ("Pl.'s Comments"); Def.-Int.'s Comments on Dep't of Commerce Redetermination

(July 23, 2014), ECF. No. 68 ("Def.-Int.'s Comments").  Defendant filed a response to the

comments on September 5, 2014.  Def.'s Reply to Pl.'s & Def.-Int.'s Respective Comments on

the Remand Results (Sept. 5, 2014), ECF No. 73 ("Def.'s Reply").  Both plaintiff and defendant-

intervenor oppose aspects of the Remand Redetermination.

## II. DISCUSSION

### A.  Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction under section 201 of the Customs Courts

Act of 1980, 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions brought under

section 516A of the Tariff Act of 1930 ("Tariff Act").  19 U.S.C. § 1516a(a)(2)(B)(vi).[1]

Section 516A provides for judicial review of a determination of "whether a particular type of

---

[1] All statutory citations are to the 2006 edition of the United States Code.

merchandise is within the class or kind of merchandise described in an . . . antidumping . . . duty

order." *Id*.  In conducting this review, the court must set aside "any determination, finding, or

conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in

accordance with law." *Id*. § 1516a(b)(1)(B).

B.  The Department's Shifting Interpretations of the Order

Commerce issued the Order in 1986.  *Antidumping Duty Order: Petroleum Wax Candles*

*from the People's Republic of China*, 51 Fed. Reg. 30,686 (Int'l Trade Admin. Aug. 28, 1986)

("*Order*").  The pertinent scope language of the Order consists of only two sentences, as follows:

> The products covered by this investigation are certain scented or unscented
> petroleum wax candles made from petroleum wax and having fiber or paper-cored
> wicks.  They are sold in the following shapes: tapers, spirals, and straight-sided
> dinner candles; rounds, columns, pillars, votives; and various wax-filled
> containers.

*Order*, 51 Fed. Reg. at 30,686.[2]  The scope language at issue in this case has remained

essentially unchanged since Commerce originally published the Order in 1986.  *See Trade*

*Associates I*, 38 CIT at __, 961 F. Supp. 2d at 1311.  The same cannot be said for the

Department's interpretation of that language, which has undergone significant shifts over the

long history of the Order.

According to background information it provided in its August 2009 request for

comments, Commerce had a practice prior to November 2001, and apparently dating back to the

1986 issuance of the Order, of interpreting the scope to include only candles in the shapes

identified in the second sentence of the scope language.  *See Request for Comments*, 74 Fed.

---

[2] In its prior opinion, the court concluded that changes since the 1986 publication of the
antidumping duty order at issue in this case did no more than conform the scope language to the
1989 adoption of the Harmonized Tariff Schedule of the United States ("HTSUS") and were not
relevant to the issues raised by this case.  *Trade Assocs. Grp., Ltd. v. United States*,
38 CIT __, __, 961 F. Supp. 2d 1306, 1311 (2014) ("*Trade Associates I*").

Reg. at 42,230-31.  The practice, which Commerce apparently followed for fifteen years, ended

when Commerce issued a scope ruling, the "JC Penney" scope ruling.  *Id*., 74 Fed. Reg.

at 42,230 ("In November 2001, the Department changed its practice on the issue of candle

shapes." (citing *Final Scope Ruling Antidumping Duty Order on Petroleum Wax Candles from

the People's Republic of China (A-570-504); JC Penney Purchasing Corporation*, (November 9,

2001))).  In the JC Penney scope ruling, Commerce concluded that the scope of the Order

included, as a general matter, candles in any shape.  *Id.*, 74 Fed. Reg. at 42,231.

        In the JC Penney scope ruling, Commerce recognized an exclusion from the scope of the

Order for certain types of candles that Commerce had identified as outside of the scope in

instructions (the "CBP Notice") it provided in 1987 to the U.S. Customs Service, which was later

renamed "Customs and Border Protection."  *Id*.  The exclusion applied to "certain novelty

candles, such as Christmas novelty candles" and "candles having scenes or symbols of other

occasions (*e.g.*, religious holidays or special events) depicted in their designs, figurine candles,

and candles shaped in the form of identifiable objects (*e.g.*, animals or numerals)."  *Id*., 74 Fed.

Reg. at 42,230 (quoting CBP Notice).  At the time it issued the CBP notice in July 1987,

Customs apparently was adhering to an interpretation under which the scope included only

candles in the specific shapes identified in the second sentence of the scope language.

        In the request for comments, Commerce summarized its current practice, which began

with the issuance of the JC Penney scope ruling, as follows: "Since 2001, the Department has

determined that if the candle is made from petroleum wax and has a fiber or paper-cored wick it

falls within the scope of the Order regardless of shape unless the candle possesses the

characteristics set out in the CBP notice, in which case a candle falls within the Department's

novelty candle exception and is not within the scope of the *Order*."  *Id*., 74 Fed. Reg. at 42,231.

In the preliminary results of its request for comments, published in August 2010, Commerce reached several conclusions.  First, Commerce concluded that the intent of the petitioners, as expressed in the petition and as shown in other documentary evidence, was that Commerce limit any antidumping duty investigation to petroleum wax candles that were in the shapes that later were specified in the second sentence of the scope language.  *Preliminary Results*, 75 Fed. Reg. at 49,479.  Second, Commerce concluded that, in promulgating the Order, it had sought to adhere to the original intent expressed by NCA as to the scope of the investigation.  *Id*.  Third, Commerce concluded that the scope language itself supports the interpretation that only candles of the shapes identified in the scope language are included within the scope.  *Id*.  Finally, Commerce concluded that it had erred when, upon issuing the JC Penney scope ruling in November 2001, it abandoned its practice of limiting the scope to the specified candle shapes in favor of a position that the scope of the Order included, as a general matter, candles of any shape.  *Id*.

As to the first conclusion, Commerce stated in the preliminary results that "[a] thorough review of the record clearly illustrates that NCA did not intend for the scope of the candles *Order* to include all candles" and that "[a]t the time of the LTFV [less-than-fair-value] investigation and the concomitant setting of the scope, NCA advocated a scope where only the enumerated shapes would be covered."  *Id*.  The August 2010 publication analyzed, in particular, the petition by which the NCA sought an antidumping duty investigation (the "Petition"), concluding that "[t]he *Petition* illustrates that, contrary to its current assertions, NCA advocated for an exhaustive scope where those candles not specifically enumerated in the scope language, as well as figurine candles, 'household,' 'utility,' or 'emergency' candles, were to be excluded from the investigation."  *Id*., 75 Fed. Reg. at 49,476-77 (footnote omitted).  Among the reasons

Commerce cited for reaching this conclusion was that "the *Petition's* like product definition

itself indicates exclusivity." *Id*., 75 Fed. Reg. at 49,477.  The August 2010 issuance quoted text

from the petition that was presented as a description of the imported merchandise.  That text, as

presented in the August 2010 issuance, reads as follows:

> The imported PRC candles are made from petroleum wax and contain
> fiber or paper-coated wicks.  They *are* {emphasis added} sold in the
> following shapes: tapers, spirals, and straight-sided dinner candles; rounds, columns, pillars,
> votives; and various wax-filled containers.  These candles may be scented or
> unscented.  While manufactured in the PRC, these candles are marketed in the
> United States and are generally used by retail customers in the home or yard for
> decorative or lighting purposes.

*Id*. (quoting *Petition* at 6-7 (emphasis in original)).  In the August 2010 issuance, Commerce also

described various scope clarifications Commerce issued to the U.S. Customs Service, both

before and after the August 28, 1986 publication of the Order, concluding that communications

with NCA indicating NCA's apparent concurrence with those clarifications "further indicate[s]

that the scope was originally intended to include only those candle shapes described in the

scope . . . ." *Id*., 75 Fed. Reg. at 49,479.

According to the August 2010 issuance, Commerce intended to promulgate scope

language in the Order that reflected NCA's intent that the investigation include only candles in

the specified shapes.  As noted above, Commerce stated in the issuance that "[a]t the time of the

LTFV investigation *and the concomitant setting of the scope*, NCA advocated a scope where

only the enumerated shapes would be covered." *Id*. (emphasis added).  Commerce added that

"[f]or instance, NCA's agreement in the Memorandum Dated April 30, 1986, that 'figurine'

candles were not within the scope of the *Order* indicates that candles in shapes other than those

enumerated in the scope language were not included within the scope of the investigation." *Id*.

In addition to the petitioner's intent, the Department's August 2010 issuance relied on the

scope language of the Order in defending the Department's previous, fifteen-year practice of

confining the scope to the shapes mentioned therein.  Quoting the two operative sentences of the

scope language, Commerce concluded that "the language of the scope is overt in its exclusivity."

*Id*. ("For instance, the scope of the *Orders* covers '{c}ertain scented or unscented petroleum wax

candles' that '*are* sold in the following shapes: tapers, spirals, and straight-sided dinner candles;

rounds, columns, pillars, votives; and various wax-filled containers' (emphasis added).")

The scope language in the Order and the intent of the petitioner, NCA, as shown in the

record of the investigation were the bases for the Department's conclusion that the JC Penney

ruling was incorrect.  The August 2010 issuance concluded as follows:

> However, a close review of the investigation record shows that,
> although addressing a key enforcement concern, the *JC Penney* methodology
> did not fully take into account record evidence from the investigation.  While
> *JC Penney* stated that the scope of the *Order* was inclusive, the language of
> the *Order* indicates that the scope is exclusive, whereby only those candles in
> the enumerated shapes are considered inside the scope.

*Id*.  Based on the petitioner's original intent, as shown in "a close review of the investigation

record," and its construction of the scope language to exclude candles in other than the specified

shapes, Commerce concluded that it had erred in changing its practice in November 2001.  *Id*.

The August 2010 issuance proposed, for a second round of public comments, a scope

interpretation that reversed the position taken in the JC Penney scope ruling in favor of one

similar to the practice the Department had followed from the inception of the Order until that

scope ruling was issued.  Under this new interpretation, only candles of the specific shapes and

types identified in the Order (which the August 2010 issuance defined in a series of footnotes)

would be considered to be within the scope of the Order.  *Id.*, 75 Fed. Reg. at 49,480 & nn.12-21.

The proposal was basically the scope interpretation of "Option A" as set forth in the request for

comments.  Consistent with Option A, Commerce proposed that candles in the identified shapes

and types would be considered to be within the scope "regardless of etchings, prints, texture,

moldings or other artistic or decorative enhancements including any holiday-related art."  *Id*.,

75 Fed. Reg. at 49,480.  Finally, the proposal was that two types of candles would be excluded:

candles identified as "household," "emergency," or "utility" candles (which the issuance defined

and grouped under the term "utility" candles), and "birthday" and "birthday numeral" candles

(also defined and grouped under the term "birthday" candles).  *Id*.

       In the final results of the request for comments, which Commerce issued approximately a

year later (on August 2, 2011), Commerce abandoned its August 2010 proposal as to candle

shapes and types and adopted essentially the position on candle shapes and types that it had taken

in the November 2001 JC Penney scope ruling.  Commerce stated its reasoning as follows:

"[e]vidence on the record indicates that contrary to the Department's position in the *Preliminary*

*Results*, the *Order* is not limited only to the enumerated shapes/types listed in the scope of the

*Order*."  *Final Results*, 76 Fed. Reg. at 46,278 (footnote omitted).  "Rather," the final results

continued, "the most reasonable interpretation pursuant to the factors established in 19 CFR

351.225(k)(1) is that the enumerated shapes/types serve as an illustrative, not exhaustive, list of

candles included within the scope of the *Order*."  *Id*. (citing *Final Results Decision Mem*. at

Comment 1).  Commerce recognized specific exclusions for the birthday and utility candles

addressed in the preliminary results and, further, recognized an exception for "figurine" candles,

stating that "the term 'figurine' is narrowly defined as a candle in the shape of a human, animal,

or deity."  *Id*. (citing *Final Results Decision Mem*. at Comment 3).  The August 2011 final results

of the request for comments announced, in conclusion, that "the Department hereby adopts an

inclusive interpretation of the scope of the *Order*, whereby all candles are included within, with

the exception of the three candle types that are excluded: Birthday, utility, and figurine (*i.e.*,

human, animal, or deity shaped) candles." *Id.*  The Final Scope Ruling adopted the position

taken in the final results of the request for comments, concluding "that the scope of the *Order*

includes candles of any shape, with the exception of birthday candles, birthday numeral candles,

utility candles, and figurine candles." *Final Scope Ruling* 3.

<u>C.  The Court's Opinion and Order in *Trade Associates I*</u>

Applying the principle established by the Court of Appeals for the Federal Circuit

("Court of Appeals") in *Duferco Steel, Inc. v. United States*, 296 F.3d 1087 (Fed. Cir. 2002)

("*Duferco*"), the court rejected the Department's conclusion that the scope of the Order included,

as a general matter, candles of any shape, reasoning that "nothing in the scope language

reasonably supports this interpretation." *Trade Associates I*, 38 CIT at __, 961 F. Supp. 2d

at 1312.  The first sentence of the relevant scope language, the court noted, could not reasonably

be so interpreted because "it provides that not all, but only 'certain,' *i.e.*, unspecified, petroleum

wax candles with fiber or paper-cored wicks are included in the scope." *Id.*  Nor could the

second sentence, the court reasoned, because it identifies candles in specific shapes, not candles

in any shape. *Id*. at __, 961 F. Supp. 2d at 1313.

The court also found several faults with the Department's construction of the word

"certain" in the first sentence of the scope language.  Addressing the Department's explanation

that Commerce had given effect to this word by excluding those types of candles for which there

was evidence in the record of the investigation that the NCA had intended such exclusions, *id*.

at __, 961 F. Supp. 2d at 1312-13, the court responded that "[b]ecause the relevant scope

language consists of only the two sentences, any reasonable construction of the term

'certain . . . petroleum wax candles' as used in the first sentence must find meaning in the second

sentence," which lists specific candle types and shapes. *Id*. at __, 961 F. Supp. 2d at 1313.

Having noted the Department's construction of the second sentence as offering only an

illustrative list of examples of common candle shapes rather than as limiting the scope, *id*. at __,

961 F. Supp. 2d at 1312, the court considered the Department's construction of the word

"certain" in the first sentence to be "impermissible not only in failing to give effect to one of the

two sentences that comprise the scope language but also in leaving only the first sentence to

function as the entire operative scope language." *Id*. at __, 961 F. Supp. 2d at 1313.  The first

sentence, according to the court's reasoning, could not reasonably be so interpreted, because by

such an interpretation "the Final Scope Ruling adopts an interpretation resulting in 'scope'

language that makes no meaningful attempt to define the scope." *Id*.  *Trade Associates I* also

concluded that Commerce unreasonably construed the term "certain" to refer to matters entirely

outside the scope language, i.e., the "'record evidence' from which Commerce concludes that the

petitioner intended that certain candle types would be outside the scope of the investigation." *Id*.

(citation omitted).  The court viewed this not only as an unreasonable interpretation but also as

an impermissible one in light of the statute, which charges Commerce, not the petitioner, with

the responsibility for defining the scope of an antidumping duty order.  *Id*. (citing 19 U.S.C.

§§ 1673(1), 1673e(a)(2) and *Duferco*, 296 F.3d at 1096).

Due to the Department's unreasonable interpretation of the scope language of the Order

as including, in general, candles of any shape, under which Commerce subjected to the Order

candles in the shapes of various identifiable objects, *Trade Associates I* remanded the Final

Scope Ruling to Commerce for reconsideration.  *Id*. at __, 961 F. Supp. 2d at 1322-23.

D.  In Applying the Term "Common Candle Shapes and Types," the Remand Redetermination
    Unlawfully Defines, Rather than Interprets, the Scope of the Order and Must Be Remanded

Commerce stated in the Remand Redetermination that it "respectfully disagrees with the

Court's *Remand Opinion and Order* and is conducting this remand under protest." *Remand*

*Redetermination* 3 (citing *Viraj Group Ltd. v. United States*, 343 F.3d 1371 (Fed. Cir. 2003)).  In

the Remand Redetermination, Commerce, under protest, took an approach to the scope of the

Order that differs markedly from any it has followed previously.

        To summarize briefly the past history, for the first fifteen years under the Order,

Commerce followed a practice of interpreting the outer boundary of the scope as defined by the

candle shapes and types listed in the second sentence of the scope language.  Beginning with the

JC Penney scope ruling in November 2001, Commerce abandoned that practice and interpreted

the outer boundary as encompassing, in general, candles in any shape, subject to specific and

limited exclusions not mentioned in the scope language of the Order itself.  In the August 2010

preliminary response to comments, Commerce proposed returning to its prior, fifteen-year

practice upon concluding that its analysis in the JC Penney scope ruling was inconsistent with

the scope language itself and the investigative record.  In the August 2011 final response to

comments and the Final Scope Ruling contested in this litigation, Commerce reversed its

preliminary position, reverted to an interpretation under which the outer boundary of the scope

encompassed generally candles in any shape, and recognized specific exclusions for three

categories of candles (nowhere mentioned in the scope language) that it identified as "birthday,"

"utility," and "figurine" candles.

        In contrast to either of the two approaches to the general scope of the Order that

Commerce took previously, the Remand Redetermination places the outer boundary of the scope

of the Order in the term "common candle shapes or types."  *See Remand Redetermination* 3-4.

This is a term or concept that is not found anywhere within the scope language of the Order.

Instead, the scope language Commerce actually chose when it formulated the Order refutes any

contention that Commerce, in formulating the language of the scope in 1986, intended to base

the decision as to whether a particular candle is within, or outside of, the scope of the Order on

whether that candle is described by the term "common candle shape or type."  The Remand

Redetermination, however, would now make individual scope decisions according to that very

inquiry.  In this way, the Remand Redetermination *defines*, rather than interprets, the scope of an

Order that Commerce formulated nearly three decades ago.

The Court of Appeals repeatedly has held that once Commerce has issued an

antidumping or countervailing duty order, it may interpret the scope of the order but, absent

resort to its anti-circumvention authority, may not modify it.  *Duferco*, 296 F.3d at 1095; *see also*

*Fedmet Resources Corp. v. United States*, 755 F.3d 912, 921-22 (Fed. Cir. 2014); *Tak Fat*

*Trading Co. v. United States*, 396 F.3d 1378, 1382-83 (Fed. Cir. 2005).  As the court stated in

*Trade Associates I*, "[t]he logic of the rule in *Duferco* is straightforward: were Commerce

empowered in a scope ruling to place merchandise within the scope of an order that cannot

reasonably be interpreted to include that merchandise, Commerce would be altering the scope,

not interpreting it."  *Trade Associates I*, 38 CIT at __, 961 F. Supp. 2d at 1321 (citing *Duferco*,

296 F.3d at 1097).  In this litigation, Commerce has attempted to use a remand proceeding as the

mechanism for adopting a new definition of the scope of an existing antidumping duty order,

even though the new definition bears no relationship to the scope language it used in

promulgating the Order.

According to the Remand Redetermination, the scope of the Order includes a candle,

"even if it is not one of the enumerated candle shapes or types in the second sentence," if "it is a

common candle shape or type."  *Remand Redetermination* 4.  The Remand Redetermination

explains that "[f]or example, if a candle is in the shape of a cone, we considered that to be a

common candle shape or type."  *Id*.  It also states that "we find that the list of shapes and types in

the second sentence of the scope of the *Order* is illustrative, because it does not specify that only

those specifically enumerated are covered by the scope language." *Id.*  In reaching that

conclusion, the Remand Redetermination echoes the Final Results.  *See Trade Associates I*,

38 CIT at __, 961 F. Supp. 2d at 1312 ("Regarding the second sentence, Commerce further

reasoned that 'the shapes listed in the scope of the *Order*' do not constitute 'an exhaustive list of

shapes, but simply an illustrative list of common candle shapes.'" (quoting *Final Results*, 76 Fed.

Reg. at 46,278)).

     As the court has discussed, the Final Results and the Final Scope Ruling interpreted the

second sentence of the scope language as merely "illustrative," i.e., in such a way as to give it no

effect.  But the Remand Redetermination goes beyond the Final Scope Ruling in placing upon

the second sentence the definition of the entire general scope of the Order.  The language of the

second sentence will not bear this construction.  Instead of speaking of "common" candle shapes,

the second sentence speaks of *specific* candle shapes: "tapers, spirals, and straight-sided dinner

candles; rounds, columns, pillars, votives; and various wax-filled containers." *Order*, 51 Fed.

Reg. at 30,686.  The sentence prefaces the list with an introductory clause: "*[t]hey* are sold in the

following shapes." *Id.* (emphasis added).  The subject of the second sentence, the pronoun

"[t]hey," must be read to have as its antecedent the subject of the first sentence: "[t]he products

covered by this investigation."  The second sentence contains no language connoting an intent to

provide a list of candle shapes that are "illustrative" of those candle shapes that are "common."

Instead, the plain meaning of the second sentence is that the identified shapes are "shapes" in

which the subject merchandise "is sold."

     In summary, the Remand Redetermination adopts an unreasonable, and therefore

impermissible, interpretation of the scope language.  By placing the outer boundary of the scope

according to a concept that Commerce describes using the term "common candle shapes and

types," Commerce impermissibly attempts to use its redetermination upon remand to establish a

new definition of the scope of the Order.  This new definition lacks any foundation in the scope

language that Commerce is charged to interpret.

E.  *Trade Associates I* Did Not Hold that Commerce Permissibly Could Construe the Second
Sentence of the Scope Language as Illustrative of "Common Candle Shapes or Types"

The Remand Redetermination bases the Department's decision, at least in part, on the

premise that *Trade Associates I* held that the second sentence of the scope language permissibly

may be interpreted as an illustrative list of common candle shapes that the Order includes.  The

court did not so hold.  In part B.1 of the Opinion and Order, under the title "The Final Scope

Ruling Unreasonably Interprets the Scope Language of the Order," the court held, instead, that

the scope language of the Order may not reasonably be interpreted to include generally all

petroleum wax candles without regard to shape.  *See Trade Associates I*, 38 CIT at __, 961 F.

Supp. 2d at 1311-13.  As summarized earlier, the court gave several reasons for so holding.

Were the court to have ruled that an interpretation such as that adopted by the Remand

Redetermination were permissible, it necessarily would have ruled that the scope language need

not be interpreted to confine the scope to the candle shapes specified in the second sentence of

the scope language.  But in deciding *Trade Associates I*, the court declined to decide that

question.  *See id*. at __, 961 F. Supp. 2d at 1318 ("The court need not decide, and does not

decide, whether the second sentence of the scope language at issue in this case expressly limits

the scope of the Order to the specified candle shapes and types.").  It was not necessary for the

court to decide that question in order to resolve the issue of whether the Final Scope Ruling was

based on a reasonable interpretation of the scope language, for before the court was a decision

under which Commerce had interpreted the Order to include, as a general matter, candles in any

shape.  That was the only general interpretation of the scope language that was before the court,

and the court rejected it.  *Trade Associates I* did not approve any alternate interpretation of the

scope language, leaving it to Commerce to reconsider the Final Scope Ruling in the entirety and

submit a new decision that, unlike the Final Scope Ruling, interprets the scope language

reasonably.

The court's discussion in *Trade Associates I* of a "common candle shape" interpretation

was in a hypothetical context.  In short, the court posited that even if, *arguendo*, it were

presumed that the second sentence of the scope language reasonably could be interpreted as an

illustrative list of common candle shapes, the court still could not sustain the interpretation

adopted by the Final Scope Ruling.  *See Trade Associates I*, 38 CIT at __, 961 F. Supp. 2d

at 1315-16.  The discussion was in the context of the court's explaining why the Final Scope

Ruling could not be sustained on the basis of ambiguity in the scope language.  *Id.* at __, 961 F.

Supp. 2d at 1315-17.  Another reference to a hypothetical "common candle shape" interpretation

was in the context of the court's explaining why certain arguments made by defendant and

defendant-intervenor in favor of the Final Scope Ruling were not convincing to the court.  *See id.*

at __, 961 F. Supp. 2d at 1321.

F.  *Trade Associates I* Did Not Apply the Scope Language to Any Specific Candle Identified in
the Scope Ruling Request

In their comment submissions, plaintiff and defendant-intervenor disagree as to whether,

and to what extent, the court ruled that specific candles identified in the Scope Ruling Request

are outside the scope of the Order.  Plaintiff, for example, contends that *Trade Associates I* ruled

in such a way that Commerce must determine that *all* the candles identified in the Scope Ruling

Request are outside the scope of the Order.  Pl.'s Comments 2-7.

Case 1:11-cv-00397-TCS   Document 75   Filed 12/28/15   Page 19 of 21

Court No. 11-00397                                                                   Page 19

As discussed previously in this Opinion and Order, *Trade Associates I* held that the Final

Scope Ruling was impermissible, and must be reconsidered upon remand, because it was based

on an unreasonable interpretation of the scope language.  The result of the application of that

interpretation to the Scope Ruling Request, the court concluded, was the placement within the

scope of "various candles made to resemble identifiable objects."  *Trade Associates I*, 38 CIT

at __, 961 F. Supp. 2d at 1322.  The court reached that conclusion based on its holding that the

Department's interpretation of the scope language, under which Commerce considered candles

of any shape to be, as a general matter, within the scope of the Order, was an impermissible one.

It did not reach that conclusion based on any application by the court of the scope language of

the Order to any individual candle.  Rather than rule on any specific candle, the court in *Trade

Associates I* left any individualized determinations as issues to be resolved by Commerce on

remand.  *See id.*, 38 CIT at __, 961 F. Supp. 2d at 1323.

To avoid any confusion that its previous opinion may have caused, the court now clarifies

that, upon remand, Commerce is directed to: (1) submit a new decision upon a second remand

that is based on a reasonable interpretation of the scope language of the Order; and (2) consistent

with a reasonable interpretation of the scope language, identify the individual candles in the

Scope Ruling Request that Commerce considers to be within the scope of the Order and those

that it considers to be outside the scope of the Order.[3]  In doing so, Commerce should interpret

---

[3] Defendant-intervenor contends that the Remand Redetermination inadvertently omitted
the Large Candy Corn candle, Product Number 610170.  Def.-Int.'s Comments 20 n.35.
Additionally, the parties differ in their description and physical portrayal of the Peppermint
Candy candles, Product Number 710101.  *Compare* Attach. 1 to *Remand Redetermination* 18
(June 16, 2014)*,* ECF No. 66-1 ("*Department's Candle Chart*") (describing the candle as a
"circle or oval") *with* Attach. 1 to Pl.'s Comments on Results of Redetermination
(July 23, 2014)*,* ECF No. 69-1.  The court instructs Commerce, on remand, to resolve these
issues.

*Trade Associates I* as holding that the scope language interpretation upon which Commerce based the Final Scope Ruling, i.e., that the scope of the Order includes, as a general matter, candles of any shape, is an impermissible one.  Similarly, it must apply on remand the holding the court has put forth in this Opinion and Order, which is that the general interpretation of the scope language upon which the Remand Redetermination is based, as described herein, is also unreasonable and therefore impermissible.  For purposes of the second remand proceeding, Commerce should not interpret the holding of *Trade Associates I* or of this Opinion and Order as an application of the scope language by the court to any specific candle identified in the Scope Ruling Request.

### III.  CONCLUSION AND ORDER

The Remand Redetermination applied to the candles at issue in this litigation an unreasonable, and therefore legally impermissible, interpretation of the scope language of the Order.  Because the Remand Redetermination did so, Commerce must reconsider this decision in the entirety.  The new decision must address the specific candles for which Trade Associates Group sought a determination.  Therefore, upon consideration of the Remand Redetermination, the comments in response thereto, and all papers and proceedings had herein, it is hereby

**ORDERED** that the Remand Redetermination be, and hereby is, remanded to Commerce; it is further

**ORDERED** that Commerce, on remand, shall submit a second redetermination upon remand ("Second Remand Redetermination") that adopts a reasonable interpretation of the scope language of the Order in accordance with the above Opinion and applies a reasonable interpretation of the scope language to the candles at issue in this litigation; it is further

**ORDERED** that Commerce shall have ninety (90) days from the date of this Opinion and Order to file the Second Remand Redetermination; and it is further

**ORDERED** that plaintiff and defendant-intervenor shall have thirty (30) days from the date of the Department's filing of the Second Remand Redetermination in which to file comments on the Second Remand Redetermination; and defendant shall have fifteen (15) days after the filing of the last comment in which to file a reply to the comments of the other parties.

/s/ Timothy C. Stanceu

Timothy C. Stanceu
Chief Judge

Dated:  December 28, 2015
       New York, New York